NOT DESIGNATED FOR PUBLICATION

No. 128,831

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ERASMO MENDIA,
*Appellant*,

v.

CITY OF WICHITA, BETH NORDICK, and
RED SPADE INVESTIGATIONS, INC.,
*Appellees.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; FAITH JOHNSON, judge. Submitted without oral argument. Opinion filed June 26, 2026. Affirmed.

*Erasmo Mendia*, appellant pro se.

*Nate Vierthaler-Johnson*, assistant city attorney, and *Jennifer Magana*, city attorney, for appellees City of Wichita and Beth Nordick.

*Anne M. Kindling*, of Joseph, Hollander & Craft, LLC, of Topeka, and *Samantha M. Fisher*, of the same firm, of Overland Park, for appellee Red Spade Investigations, Inc.

Before HILL, P.J., PICKERING and BOLTON FLEMING, JJ.

PER CURIAM: Erasmo Mendia filed a lawsuit against the City of Wichita (the City); Beth Nordick, a city inspector; and Red Spade Investigations. Nordick had filed a complaint alleging violations of the City's nuisance code, and Red Spade had served a summons. Mendia sought monetary damages for alleged violations of his constitutional rights and for injuries he alleged were the result of Red Spade's service of process. The

1

parties filed competing motions for summary judgment. The district court granted the defendants' motions for summary judgment and dismissed Mendia's motion as moot.

Mendia now appeals and raises 15 issues relating to his notice of appeal, the constitutionality of Title 8 of the City's municipal code, the appropriateness of summary judgment, claims of error by the district court, and the constitutionality of the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 et seq. After a thorough review of the record, we find no error and affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

Mendia filed a pro se lawsuit naming the City, Nordick, and Red Spade as defendants. He alleged that, on September 8, 2020, Nordick stopped at Mendia's house while he was cleaning up from a garage sale and told him that, as part of the clean-up, Mendia's metal bookshelves would have to be removed. Mendia alleged that he told Nordick that he would be using the shelves to grow garlic, cilantro, onions, beans, and peppers and that Mendia would not move the shelves unless a judge told him to. He asserted Nordick told him that she could arrange that.

A few weeks later, Mendia received a letter from the City addressed to Eddie Mendina and refused to sign for it. Mendia alleged that he notified the City's inspection office to advise it of his correct name. Around Christmas 2020, a woman attempted to serve a summons, but, because it named Eddie Mendina, Mendia refused service. In February 2021, a man attempted to serve Eddie Mendina at the address, but Mendia again refused service.

Mendia alleged that, on March 13, 2020, he was asleep at his desk when a "large man" pounded on his door trying to serve "Eddie Mendina." When Mendia told him that he could not sign for the paperwork because "that wasn't me," the man allegedly "started

2

hollering that yes [Mendia] was going to get this this time, while taking it off his clipboard attempting to throw it into my home." Mendia alleged that, while he was turning to close the door, his "right foot got caught twisting my right ankle and right knee . . . enduring sharp pains." Mendia also asserted that, by throwing the summons into his home, the man had invaded his privacy.

The City Municipal Court ultimately found Mendia guilty of three violations of the City's nuisance code. Mendia appealed to the district court. Mendia asserted that the City dismissed the case two days before trial because he "continued to insist that the only nuisance [condition] present on [his] property was the color of [his] skin."

Mendia's petition alleged that he suffered a bleeding ulcer in October 2022 because of the trauma the City, Nordick, and the process server caused him. Mendia's petition alleged deprivation of constitutional rights and alleged racial discrimination by the City and the other defendants. He sought $75,000 as a remedy for this claim. Mendia also alleged the City violated his property rights and sought a $75,000 judgment on that claim as well. Mendia asserted a claim of "unconstitutional search" by the City and sought $75,000 for the claim. Similarly, Mendia alleged Red Spade violated his constitutional rights that caused injuries and damages and sought a $75,000 judgment. Finally, Mendia alleged Nordick violated section 15 of the Kansas Constitution Bill of Rights and requested a $75,000 judgment. Less than a week later, Mendia moved for leave to file additional counts alleging negligence by all defendants. Mendia sought $75,000 judgments from each defendant for their negligence.

Red Spade, the City, and Nordick all answered Mendia's petition. Red Spade asserted the affirmative defenses of assumption of risk, contributory negligence or comparative fault, estoppel, license, and any affirmative defenses that may later arise. After Red Spade answered, Mendia moved for leave to file an amended petition. In its answer, the City asserted Mendia failed to comply with K.S.A. 12-105b. The City and

3

Nordick both asserted they were exempt from liability under the KTCA and were immune from liability under the doctrines of legislative immunity and/or qualified immunity.

At a March 29, 2024 hearing, the district court denied Mendia's motion for leave to file an additional count and denied Mendia's motion for leave to file an amended petition.

Following discovery, the parties filed competing motions for summary judgment. Mendia's motion for summary judgment alleged that, on March 13, 2021, he "was in a deep meditative state experiencing, in [his] psychic, where in [he] had transcended [his] physical and became identified/infused with the house." Mendia asserted that, "[s]uddenly there was a loud pounding on me causing me sharp deep pain and the collapsing of my psychic consciousness expansion back into my body experiencing great psychic trauma and mental pain." Mendia contended that, in addition to the "psychic injury," he suffered a right knee, lower back, and right ankle injury "when [his] foot got caught as [he] was trying to close the door to prevent the process se[r]ver from giving me the criminal complaint" that the process server acknowledged was for another person.

Mendia's motion for summary judgment is not structured like a normal motion for summary judgment. The first nine paragraphs identify the issues. Paragraphs 10 through 21 contain factual contentions but are not included in Mendia's "uncontroverted contentions of fact." Only three of these paragraphs contain citations to exhibits—a body camera video of the attempt to serve process, a policing complaint Mendia subsequently filed, and a letter from his doctor advising that Mendia was being treated for conditions that may require frequent use of the bathroom. Mendia's "uncontroverted contentions of fact" do contain citations to exhibits that purport to support Mendia's facts. However, these factual contentions involve Mendia's subsequent actions and are not contentions about the alleged incident. Further, these "factual contentions" could generally be

4

characterized as a description of the exhibit. For example, Paragraph 22.11. states: "These are the first 6 pages of The Code Book. On page 5. It is stated, 'except Titles 8 and 27, which have been set aside for future expansion.' They Were set aside before being adopted." Similarly, Paragraph 22.14. states: "These are direct copies from the City ordinances overlaid with my notes for better understanding in prep for writing the Petition."

The City and Nordick filed a joint motion for summary judgment which contained just seven undisputed facts, all related to the underlying municipal court case. The City's argument focused on the application of the KTCA, claiming Mendia's petition did not allege "any statutory or common law vehicle for suing the City for damages based on state constitutional violations." The City contended that the "principal thrust" of Mendia's claims was that the City should be liable for Nordick's allegedly unconstitutional actions. But it suggested Mendia provided no authority allowing him to sue for damages based on the alleged violation of his constitutional rights because those claims could not have been brought against a private citizen. The City also asserted the KTCA barred liability for damages resulting from the enforcement of a law, even if the law is invalid.

The City also argued Nordick was immune from claims for damages under the KTCA as well. Furthermore, it alleged Nordick was entitled to qualified immunity because she was acting within her official capacity when she issued the criminal complaint because her conduct did not violate an established constitutional right. The City suggested Mendia's negligence claims should be dismissed because the City and Nordick were statutorily exempt from liability under the KTCA. It also asserted that the negligence claims must be dismissed because Mendia did not prove causation, noting that Mendia had not retained an expert to establish causation. Finally, the City argued it could not be held responsible for Red Spade's actions because Red Spade was an independent contractor. It requested Mendia's petition be dismissed with prejudice.

5

Red Spade also filed a lengthy motion for summary judgment. It included the body camera video of the service of process as an exhibit to the motion for summary judgment. Red Spade focused its arguments on the lack of causation to support Mendia's claims. Like the City, Red Spade noted that Mendia had not retained an expert to prove causation. It noted that it was undisputed that Red Spade's employee did not make physical contact with Mendia and that Mendia was uninjured when the employee left Mendia's porch. Similarly, Red Spade argued that, because it is a private entity, it could not and did not violate Mendia's constitutional rights.

The district court heard the competing motions for summary judgment on December 19, 2024. The City argued first. After the City's argument, the district court allowed Mendia to respond. Mendia began by focusing on the language of the nuisance code, and the district court directed Mendia to respond to the City's motion for summary judgment. Mendia began discussing why the nuisance code was unconstitutional and discriminatory, and the district court stopped him to ask whether he disputed any of the City's facts. Mendia claimed that he appeared in municipal court only to dispute the name on the municipal court filing, not the charges themselves. Mendia also disputed the date on the notice to appear in one of the City's uncontroverted facts.

The district court granted summary judgment as to the City and Nordick. It found that Mendia's controverted facts were immaterial. The district court found the City and Nordick "cannot be found liable for constitutional claims, nor negligent claims." It also found the City and Nordick were entitled to qualified immunity and were statutorily exempt from liability under the KTCA. The district court found Red Spade was an independent contractor and that Mendia had not sufficiently alleged causation. The district court asked the City to draft a journal entry of the judgment.

Next, Red Spade argued its motion for summary judgment. Red Spade played the body camera video which "demonstrates the undisputed facts as to the service exchange

that's the basis for Mr. Mendia to sue against Red Spade." Red Spade noted that, based on the independent contractor finding the district court had just made, it could not be liable for any constitutional violations. It asserted that "the video is entirely dispositive of all Mr. Mendia's claims against Red Spade." Red Spade also argued Mendia had no proof to support his injuries were caused by Red Spade's conduct because Mendia did not provide an expert to show causation.

In response, Mendia argued his doctor's affidavit "would clearly establish" that Mendia's injuries "were going to be traced to those interactions that happened on that porch." After locating Mendia's doctor's affidavit, the district court stated it would consider it with Red Spade's motion for summary judgment. Mendia again argued that, because he was in a transcendental state, "banging" on his door caused him injury and that was a question for the jury.

The district court began by explaining the standard of review: "[T]he standard of review that I am following is that summary judgment is appropriate when pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show no genuine issue exists as [to] any material fact, and the moving party is entitled to judgment as a matter of law." The district court found that Red Spade was "not a state actor; and therefore, they are not liable for constitutional violations." The district court also found that causation was lacking, and that there were no facts supporting intrusion upon seclusion or trespass. The district court granted Red Spade's motion for summary judgment.

After granting both the City's and Red Spade's motions for summary judgment, the district court found Mendia's motion for summary judgment was moot. The district court continued, "I will note for the record, however, in reading it, it did not comply with either the Supreme Court rules, nor statute. There is no reference to any . . . evidence or record for the undisputed facts to be argued." It denied Mendia's motion for summary judgment

7

as moot. The district court entered its order denying Mendia's motion for summary judgment as moot on December 20, 2024. Both the City and Red Spade filed proposed journal entries of judgment.

Mendia filed his notice of appeal on January 13, 2025. It stated he appealed from "the MINUTES/ORDER filed being signed by the Judge on December 20th, 2024." In handwriting, just above his signature, Mendia added: "The proposed Journal Entr[ies] of Defendants are MOOT pursuant to the final Journal Entry by the Court on Dec. 20th, 2024. Plaintiff does APPEAL every item listed on their Proposed Journal Entries."

The district court entered judgment for the City and Nordick on January 15, 2025. It entered judgment for Red Spade on February 4, 2025.

ANALYSIS

To begin, Mendia has not complied with Supreme Court Rule 6.02(a)(5) (2026 Kan. S. Ct. R. at 36). Rule 6.02(a)(5) requires that each issue in an appellate brief include both a "citation to the appropriate standard of appellate review and a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on. If the issue was not raised below, there must be an explanation why the issue is properly before the court." 2026 Kan. S. Ct. R. at 36. Mendia's brief does not include any citations to standards of review, and, while Mendia cites to where issues were raised in his petition, he includes no citations for where the issue was raised in his motion for summary judgment or where the issue was ruled on.

Further, Mendia's brief includes almost no analysis in support of his argument. Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority is like failing to brief the issue. An issue not briefed

8

is deemed waived or abandoned. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018).

*Standard of Review*

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo." *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

"[A]n issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment." *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013). In other words, "if the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of material fact" for purposes of summary judgment. 296 Kan. at 934.

*Discussion*

On appeal, Mendia raises 15 issues. Broadly speaking, these issues may be grouped into five categories: (1) claims regarding his notice of appeal; (2) claims regarding the constitutionality of Title 8 of the City's municipal code; (3) claims regarding the appropriateness of summary judgment; (4) other claims of error by the

district court; and (5) the constitutionality of the KTCA. We have reorganized Mendia's claims and consolidated the claims when appropriate.

I. *The Notice of Appeal Was Sufficient to Initiate this Appeal*

Mendia argues his notice of appeal was sufficient to initiate this appeal. The City does not contest this point. The district court filed its minutes entry on December 20, 2024. K.S.A. 60-2103(a) states, in part, that a notice of appeal must be filed within 30 days from the entry of judgment absent a showing of excusable neglect. Mendia filed his notice of appeal on January 13, 2025, well within the 30-day time limit.

K.S.A. 60-2103(b) states in relevant part: "The notice of appeal shall specify the parties taking the appeal; shall designate the judgment or part thereof appealed from, and shall name the appellate court to which the appeal is taken." Mendia's notice of appeal sufficiently identifies the judgments appealed from: the "MINUTES/ORDER filed being signed by the Judge on December 20th, 2024." Later, in handwriting, Mendia includes "every item listed on [the defendants'] Proposed Journal Entries."

Mendia also questions whether the December 20, 2024 journal entry denying his motion for summary judgment "[l]egally gives the Defendants Judgment in this case" and started the clock for this appeal. He asserts the December 20, 2024 journal entry is "deficient and is erroneous . . . as to the sufficiency of the Journal Entry."

Under Supreme Court Rule 2.03(a) (2026 Kan. S. Ct. R. at 15), a premature notice of appeal "that complies with K.S.A. 60-2103(b)" is effective when it is "filed after a judge of the district court announces a judgment to be entered, but before the actual entry of judgment." Here, the district court announced its ruling on all three motions for summary judgment on December 19, 2024. The district court entered the order denying Mendia's motion for summary judgment as moot on December 20, 2024. Mendia's notice

10

of appeal was not premature as to the denial of his motion for summary judgment. Mendia's notice of appeal was premature as to the City's journal entry of judgment—entered on January 15, 2025—and Red Spade's journal entry of judgment—filed on February 4, 2025. But because the district court announced its ruling on December 19, 2024, Mendia's notice of appeal is still effective.

Mendia, however, is incorrect that the journal entry is deficient. The December 20, 2024 journal entry denying his motion for summary judgment includes findings of fact and conclusions of law. The court found that Mendia's motion for summary judgment was moot because it ruled in favor of the defendants on their motions for summary judgment. In this case, no party challenged the sufficiency of timeliness of Mendia's notice of appeal. We likewise find no deficiencies with Mendia's notice of appeal because it is both sufficient and timely.

II.      *The District Court Did Not Find Mendia Lacked Standing, Did Not Err by Holding Mendia to the Same Standard as an Attorney, and Did Not Err by Denying His Motion to Amend*

A.      *The district court did not find Mendia lacked standing to bring his claims.*

Mendia argues he had standing to challenge the constitutionality of the nuisance code. He frames this argument as "[w]hether Petition plainly stated 'Mr. Mendia does have standing to challenge the Constitutionality of the nuisance code of the City of Wichita, Ks. Through 'ITS APPLICATION ON HIM.'" Mendia asserts that "when a Kansan is directly affected by an unconstitutional law," the Kansan has "grounds/standing to challenge said law through its application on him."

At no point did any party challenge Mendia's standing to bring a claim. Nor did the district court deny Mendia's claims based on a lack of standing. Instead, the district

11

court found that the City and Nordick "cannot be found liable for constitutional claims, nor negligent claims" because they were "statutorily exempt from liability under the Kansas Tort Claims Act for actions alleged in the petition." It also found that both the City and Nordick were entitled to qualified immunity on Mendia's claims. The district court also found Mendia's claims lacked causation. Finally, the district court found that Red Spade was an independent contractor and, therefore, the City and Nordick could not be liable for Red Spade's actions.

The district court did not erroneously conclude that Mendia lacked standing. He is not entitled to relief based on this issue.

B. *The district court did not err by holding Mendia to the same standard as a licensed attorney.*

Mendia argues the district court erred because it held him "equal" to the requirements of a licensed attorney but treated him "separately" from "real licensed attorneys." He asserts "the white people performed their legal rituals to strip me of any Justice to the facts set forth in the Petition." But our court has long held that "[a] pro se litigant in a civil case is required to follow the same rules of procedure and evidence" that an attorney is required to follow. *Joritz v. University of Kansas*, 61 Kan. App. 2d 482, 498, 505 P.3d 775 (2022); *Mangiaracina v. Gutierrez*, 11 Kan. App. 2d 594, 595-96, 730 P.2d 1109 (1986).

Mendia brought a civil action seeking damages. The district court was required to liberally construe Mendia's pleadings; the district court did so. See *Joritz*, 61 Kan. App. 2d at 498. And the district court correctly held Mendia to the same rules of procedure and evidence which bound the other litigants. To do otherwise would have given him an advantage over the other litigants. As such, Mendia is not entitled to any relief.

12

C. *Mendia has not met his burden to show error in the denial of his motion to amend his petition to allege negligence.*

Mendia asserts that the denial of his motion to amend his petition to add a count of negligence against the City and Nordick was "a recognition by the court that the Petition was grounded in claims of unconstitutional deprivations of fundamental constitutional rights, therefore [a claim for negligence was] not needed."

Mendia moved to add a count of negligence for all defendants on March 14, 2023. His motion was denied on March 29, 2024. The journal entry denying the motion simply states that the motion is denied; it does not provide a reason for the denial. The record does not contain the March 29, 2024 hearing transcript and, therefore, does not contain the district court's rationale for denying the motion. The burden is on the party making a claim to designate a record sufficient to present its points to the appellate court and to establish its claims. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 462-63, 509 P.3d 1211 (2022). Mendia has not met his burden to show error.

III. *Mendia's Claims Regarding Title 8 of the City's Code are Meritless*

A. *Title 8 of the City's code had the force of law in 2020.*

Mendia argues that Title 8 of the City's ordinances does not have the force of law because it was "set aside" at the time the City's ordinances were adopted. For support, he cites Wichita Municipal Ordinance No. 31-990, adopted in 1972, which states, in relevant part:

> "That the ordinances of the City of Wichita, Kansas, of a general and permanent nature, as codified in Titles 1 to 28, both inclusive, except Titles 8 and 27, which have been *set*

13

*aside for future expansions*, are ordained as general ordinances and adopted as 'The Code of the City of Wichita, Kansas.'" (Emphasis added.)

Mendia conflates "set aside" with "repealed." He is wrong. In this context, "set aside" clearly means "reserved."

Ordinance No. 47-894 heavily modified Title 8, adding in the nuisance language Mendia complains of. This occurred after 2008, so even if the language in Ordinance No. 31-990 is interpreted to repeal Title 8, Ordinance No. 47-894 subsequently enacted the ordinances at issue. Mendia misunderstands the timing of the ordinances in question, and Title 8 was in effect when he was ticketed for nuisance.

B.    *Title 8 of the City's municipal code is not an unconstitutional bill of attainder*.

Mendia argues that the City's nuisance code is unconstitutional because it constitutes a bill of attainder. But Mendia did not raise this argument in his petition or in his motion for summary judgment. Similarly, Mendia did not argue that the City's nuisance code is an unconstitutional bill of attainder in his response to the City's motion for summary judgment or his response to Red Spade's motion for summary judgment.

This argument is raised for the first time on appeal. "Generally, issues not raised before the district court cannot be raised on appeal." *In re N.E.*, 316 Kan. 391, 407, 516 P.3d 586 (2022). While there are several exceptions to this rule, an appellant is required to explain why an issue that was not raised below should be considered for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019); Rule 6.02(a)(5). In *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015), the Kansas Supreme Court warned that Rule 6.02(a)(5) would be strictly enforced, and litigants who failed to comply risked a ruling that the issue was improperly briefed and would be deemed

14

waived or abandoned. Even if Mendia claimed an exception to the rule, we are not obligated to consider an unpreserved claim. *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022). We decline to do so here.

IV.  *The District Court Did Not Err by Granting Defendants' Summary Judgment Motions*

A.  *The district court applied the appropriate standard of review for motions for summary judgment.*

Mendia questions whether the district court used the appropriate legal standard when granting the City and Nordick summary judgment. For support, Mendia cites eight paragraphs from his petition, which generally assert that the City's nuisance ordinances are unconstitutional. He provides no argument, cites no caselaw, and does not identify what he believes to be the appropriate legal standard to assess his claims. While we "should liberally construe [a pro se appellant's] arguments when properly raised," we cannot "bolster arguments that are properly before us but inadequately briefed." *Joritz*, 61 Kan. App. 2d at 498-99; see *In re Adoption of T.M.M.H.*, 307 Kan. at 912 (holding point raised without pertinent authority or without analysis explaining why it is sound despite lack of supporting authority is failing to brief issue and thus abandoned). Mendia's argument about the proper summary judgment standard is inadequately briefed.

Still, the district court applied the summary judgment standard presented in both the City's and Red Spade's motions for summary judgment. That standard stated that "summary judgment is appropriate when the evidence demonstrates no genuine issue of material fact as to whether judgment should be entered as a matter of law." This is the appropriate standard to apply to motions for summary judgment. See *GFTLenexa, LLC*, 310 Kan. at 981-82.

15

On appeal, Mendia complains that the district court did not comply with K.S.A. 60-252, K.S.A. 60-254, or K.S.A. 60-258 when ruling against his motion for summary judgment. He contends that the district court "did not independently make a finding of the proper Standard of Review." Again, however, the district court applied the correct standard of review. Mendia is not entitled to relief based on this argument.

B. *The district court did not err by considering the City's motion for summary judgment before considering Mendia's motion for summary judgment.*

On appeal, Mendia questions whether the district court erred and denied him due process when he was not allowed to argue his motion for summary judgment despite filing first. He asserts the district court "actively" denied him the ability to rebut the City's summary judgment motion which denied him due process.

Mendia cites neither statute nor caselaw for the proposition that his motion should have been heard first because he filed it first. Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. at 912. Furthermore, the City's motion for summary judgment focused on defenses to Mendia's petition—that the City could not be found liable for constitutional claims under the KTCA; qualified immunity applied; and Mendia failed to show causation. The district court could not rule on Mendia's motion for summary judgment without first considering the City's defenses.

And the district court did not prevent Mendia from rebutting the City's arguments; on the contrary, he had an opportunity to respond to the City's arguments in its motion for summary judgment. However, the district court focused Mendia on the arguments in the City's motion, rather than letting Mendia address his own motion. The district court asked whether Mendia agreed or disagreed with the City's uncontroverted facts, and

Mendia indicated he disagreed with Paragraphs 3 and 4. Mendia received an opportunity to address the City's arguments but focused instead on his own. He was not denied due process.

C.   *The district court denied Mendia's motion for summary judgment as moot, not because he failed to comply with statutes and the Kansas Supreme Court rules.*

Mendia questions whether the district court's finding that his motion for summary judgment did not comply with statutes or Kansas Supreme Court rules violated section 3 and section 5 of the Kansas Constitution Bill of Rights. He asserts he had a right to petition the government for a redress of grievance and to have a jury decide his issues.

Mendia misunderstands the denial of his motion for summary judgment. Although the district court could have denied his motion for summary judgment for failing to comply with statutes and Kansas Supreme Court rules, the district court did not. Instead, it denied Mendia's motion for summary judgment as moot because it had already granted summary judgment to the City, Nordick, and Red Spade, and there were no remaining claims against any defendant.

D.   *Red Spade did not admit all of the allegations in Mendia's motion for summary judgment.*

Mendia asserts that the district court's finding that he failed to comply with statute or Kansas Supreme Court rules is "prima facia evidence that the Court succumbed to the EVIL imbedded in Wichita's nuisance code propagating color of skin discrimination in the holding Plaintiff to be equal before the Court with its licensed attorneys, members of the legal monopoly YET distinctly separate set apart." He complains that the district court "ignored" Red Spade's "proclamation" that the body camera video was dispositive

17

of his claims. Mendia believes Red Spade admitted all the allegations in his motion for summary judgment and that the only undisputed fact to remain is for a jury to determine Mendia's injury compensation.

While Red Spade stated the video was "entirely dispositive of all Mr. Mendia's claims against Red Spade," it did not admit his allegations. On the contrary, Red Spade believed the video was dispositive because it showed that Red Spade's agents did not go anywhere except onto Mendia's front porch, so Mendia's allegations of intrusion upon seclusion and trespass to property lacked merit. Further, Red Spade asserted its agent did not injure Mendia or enter his property unreasonably. Red Spade argued the body camera video showed the entire encounter and did not support Mendia's claims.

Despite Mendia's assertions to the contrary, Red Spade did not admit all Mendia's facts. And the district court did not dispose of Mendia's claims as moot because of the color of Mendia's skin or because it was "under the influence of the EVIL that the City brought into the Court room." As discussed above, the district court denied Mendia's motion for summary judgment as moot because there were no remaining claims against any defendant.

E.    *Mendia's religious practices claim is unavailing because the district court granted summary judgment for the City, Nordick, and Red Spade.*

On appeal, Mendia asserts that the district court erred by dismissing his motion for summary judgment because he sustained injuries during his "Religious practice of transcendental psychic transference becoming one by infusion into and part of his home." He claims that Red Spade's agent "knocked on [his] door, causing psychic trauma injury in the shattering collapsing psychic energy awareness field back into my body, now misaligned due to that trauma."

Mendia's argument is nearly incomprehensible. It also ignores the reality of the situation: The district court denied his motion for summary judgment because it granted both the City's and Red Spade's motions for summary judgment and dismissed all claims against the City, Nordick, and Red Spade. Again, no claims remained to be considered, and Mendia's motion for summary judgment was moot.

V.    *Mendia Did Not Argue the KTCA Violated Section 18 of the Kansas Bill of Rights Before the District Court*

Mendia questions whether he "sufficiently stated the petition was not under KTCA because of being unconstitutional[ly] prohibited by the guarantees of Section 18 [of the] Bill of Rights [to the Kansas] Constitution." He asserts that "[t]he KTCA is a degradation and deprivation to the will of the spirit of those Kansans who voted [section 18] into existence." He similarly argues that "[t]he qualified immunity doctrine is not compatible but straying from the spirit and defiantly also to the Text."

Mendia's brief seemingly argues that the KTCA and qualified immunity are both unconstitutional. He did not raise this argument below. Mendia has not explained why we should consider this issue despite his failure to comply with Rule 6.02(a)(5). Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 729, 317 P.3d 70 (2014). This issue is not properly before the court.

Affirmed.

19